FILED
OCT 27 2005
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

MODESTO DIVISION

| | |
|---|---|
| In re<br><br>In re DWIGHT M. TRYON, DDS,<br><br>Debtor. | Case No. 05-90582-A-13 |
| DWIGHT M. TRYON, DDS,<br><br>Plaintiff,<br><br>v.<br><br>NETBANK BUSINESS FINANCE, f.k.a. REPUBLIC LEASING COMPANY, and CITICORP VENDOR FINANCE, INC.,<br><br>Defendants. | Adversary No. 05-9055 |

**MEMORANDUM DECISION**

Chapter 13 debtor Dwight M. Tryon, D.D.S., and creditors Citicorp Vendor Finance, Inc., an assignee of Choice Health Leasing ("Citicorp"), and Netbank Business Finance, formerly known as Republic Leasing Company ("Netbank") (Citicorp and Netbank are collectively referred to as "Creditors") seek a determination of the priority of their liens against the debtor's business personal property, consisting of office and dental equipment, account receivables, and the proceeds from those items ("Property"). The court has valued the Property at $42,982.48. This includes $500 of office equipment, $11,770 of dental

equipment, and $30,712.48 of proceeds from account receivables.

This matter initially came before the court in the form of three motions to value collateral and determine the secured status of the claims of Union Federal Bank ("Union"), Netbank, and Citicorp (docket control numbers SSA-2, SSA-3, and SSA-4, respectively).

Union previously agreed that its security interest is in third priority position, after the Citicorp and Netbank liens. Given the amounts owed to Citicorp and Netwbank and the value of the Property, Union does not dispute that its claim is unsecured. See 11 U.S.C. § 506(a).

Thus, the only remaining issue is the relative priority of the Citicorp and Netbank liens. While the valuation of collateral may be determined in the context of a contested matter, the determination of the priority of these liens requires an adversary proceeding. See Fed. R. Bankr. P. 3012, 7001(2), 9013, 9014(a). With the stipulation of the Creditors and debtor, the court deemed the motions, insofar as they sought to determine the priority of the Creditors' liens, to be an adversary proceeding. The parties waived further discovery, stipulated to the facts outlined below, and submitted the matter for the court's decision.

Citicorp perfected its security interest in the Property by filing a financing statement with the California Secretary of State on March 13, 2002. Citicorp filed two more financing statements in April 2002 and May 2003, but the parties agree that those later financing statements are immaterial to the court's analysis and the result.

Netbank perfected its security interest in the Property by filing a financing statement with the California Secretary of State on July 8, 2002.

Netbank argues that Citicorp did not properly perfect its security interest in the Property because: (1) the underlying written loan agreement between Citicorp and debtor ("Agreement"), attached to the financing statement, is not dated and hence the filing did not comply with the 20-day requirement of Cal. Comm. Code § 9315(d); and (2) the financing statement does not properly identify the Agreement, making the financing statement misleading.

Citicorp, on the other hand, contends that it filed its financing statement timely and that the financing statement is not misleading and contains all of the information necessary to perfect its security interest.

A security interest is perfected when it has "attached" and when "all of the applicable requirements for perfection in Sections 9310 to 9316, inclusive, have been satisfied." See Cal. Comm. Code § 9308(a).

In order for a security interest to attach, the secured party must have given value, the debtor must have rights in the collateral, and the debtor have signed or otherwise "authenticated" a written security agreement describing the collateral. See Cal. Comm. Code § 9203.

Citicorp's security interest attached on or about March 11, 2002. On that date, the debtor received $55,000 from Citicorp. The loan was made pursuant to the terms of the Agreement. The debtor signed that Agreement. In it, he promised to repay the

$55,000 and he secured his promise with existing and after-acquired dental and office equipment and accounts receivable. Hence, it is clear that value was given, the debtor owned the collateral for the loan, and the debtor signed a written security agreement that identified the collateral for the loan.

NetBank notes that the Agreement is undated. This does not affect the attachment of Citicorp's security interest. Nothing in Cal. Comm. Code § 9203 requires that the written security agreement be dated. And, it is possible to ascertain from the paperwork accompanying the written loan agreement that it was signed sometime between March 6, the date the debtor applied for the loan, and March 11, 2002, the date the loan funded. The court also notes that the loan agreement was sent by facsimile to or from the debtor on March 7. The court concludes that the Agreement was signed by the debtor on March 7.

As relevant to this case, perfection of a security interest requires the filing of a financing statement with the California Secretary of State. See Cal. Comm. Code § 9310(a). The contents of a financing statement are prescribed by Cal. Comm. Code § 9502(a). The financing statement must identify the debtor and the secured creditor, and describe the collateral covered by the financing statement. See Cal. Comm. Code § 9502(a). A description of the obligation secured by the collateral is not required. Id.

Citicorp's financing statement satisfies these statutory requirements. In its financing statement, Citicorp named its debtor and identified itself as the secured party. The description of its collateral included accounts, general

intangibles, equipment and "[p]roceeds . . . of any of the foregoing."

As to proceeds derived from this collateral, Cal. Comm. Code § 9315(c) provides that a security interest in proceeds is perfected "if the proceeds in the original collateral was perfected." Hence, Citicorp's security interest in proceeds was also perfected by its perfection of its security interest in the original collateral, *i.e.*, the debtor's accounts.

Next, Netbank argues that because Citicorp misidentified in the financing statement the secured obligation as a lease rather than a loan, the financing statement is somehow deficient and did not perfect Citicorp's security interest. While the description of the secured obligation of the lease may (or may not) have been accurate, this did not nullify the effectiveness of the financing statement for three reasons.

First, as already noted, nothing in Cal. Comm. Code § 9502(a) requires that the secured obligation be mentioned or described.

Second, assuming that the secured obligation was misidentified, Netbank nonetheless had notice that Citicorp claimed a security interest in the identified collateral. It could make no difference to Netbank what kind of obligation was secured by the collateral.

Third, Netbank essentially argues that it is unusual for an equipment lease to be secured by anything other than the equipment that is the subject of the lease. It may be correct. However, nothing prohibits a lessor from taking a security interest in other assets, such as accounts receivable, to secure

the lessee's performance under the lease.

Had Netbank made an inquiry with Citicorp and been told that no lease existed, this might have some basis to assert estoppel against Citicorp. Netbank admits, however, that it made no inquiry of Citicorp regarding the financing statement before perfecting its own security interest in the Property. Consequently, the court can discern no relevance to a possible misidentification of the secured obligation as a lease in the financing statement.

Netbank also argues that because the Agreement is undated, Citicorp cannot prove that it has complied with the 20-day requirement of Cal. Comm. Code § 9315(d).

Netbank misunderstands the applicability of Cal. Comm. Code § 9315(d). Section 9315(d) merely provides that a creditor's security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless certain conditions are met.

In this case, all parties have assumed that the debtor's accounts receivable are proceeds. They are not for the simple reason that the debtor is not selling inventory or any other tangible property. The debtor is a dentist. He sells his services. No one has a security interest in those services. Hence, there are no proceeds from the "sale, lease, license, exchange, or other disposition of collateral." Cal. Comm. Code § 9102(a)(64). Rather, the debtor's accounts receivable, both those existing when the loan was made and those later acquired by the debtor, were merely personal property that could be made security for the loan. Citicorp perfected a security interest in

this asset.

However, even if the accounts receivable generated after the loan can be characterized as proceeds, Citicorp's security interest in them remains perfected.

First, Citicorp has satisfied the requirements of section 9315(d)(1). That is, the proceeds are not cash, Citicorp has a perfected security interest in its original collateral, and the proceeds, accounts receivable generated by the debtor's business, are collateral in which a security interest may be perfected by filing in the office where Citicorp filed its financing statement.

Second, section 9315(d) does not bar a creditor from perfecting its security interest subsequent to the 21st day after attachment. Hence, even if Citicorp's financing statement was filed after the 21st day of attachment, the financing statement still perfected Citicorp's interest prospectively. Citicorp's financing statement was filed on March 13, 2002 and Netbank did not file a financing statement prior to March 13, 2002. Hence, the possibility that Citicorp's security interest may have been unperfected for some period prior to March 13, 2002 is irrelevant.

Finally, the financing statement is dated within 20 days of the Agreement. The date on the financing statement is March 13, 2002, whereas the exhibits to the Agreement and the declaration submitted by Citicorp indicate that debtor signed it on March 7, 2002.

Based on the foregoing, the court concludes that Citicorp perfected its security interest in the Property when it filed the

financing statement on March 13, 2002. Pursuant to the "first in time of filing or perfection" rule of Cal. Comm. Code § 9322(a)(1), the court determines that Citicorp's security interest in the Property has priority over Netbank's security interest. Further, because the Property has a value of less than the amount owed to Citicorp, application of 11 U.S.C. § 506(a) makes Citicorp's claim secured up to $42,982.48 and unsecured for the balance and it makes Netbank's claim completely unsecured.

Citicorp shall lodge a judgment consistent with this decision. It will be entered once the debtor pays the filing fee for this adversary proceeding.

Dated: October 27, 2005

By the Court

Michael S. McManus, Chief Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Office of the US Trustee
501 I St. Ste 7-500
SACRAMENTO, CA 95814

Ellen Stern
17630 El Mineral Rd
Perris, CA 92570

Jennifer Crastz
15910 Ventura Blvd 12th Fl
Encino, CA 91436-2829

Steven Altman
1127 12th St #104
PO Box 1291
Modesto, CA 95353

Dated: October 27, 2005

Susan C. Cox
Susan C. Cox
Judicial Assistant to Judge McManus